[Cite as *State v. King*, 2011-Ohio-3417.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24141 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 09-CR-3539 |
| v. | : | |
| | : | |
| | : | (Criminal Appeal from |
| CARLTON KING | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of July, 2011.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

HERBERT CREECH, Atty. Reg. #0005198, 200 Jamestown Circle, Suite F, Dayton, Ohio 45458
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1}   Defendant-appellant Carlton King appeals from his conviction and sentence for Improperly Handling Firearms in a Motor Vehicle.   King argues that the trial court asked too many leading questions of the witnesses, placing itself in the role of prosecutor rather than judge.   He points out that the trial court erred in finding that the Second Amendment to the

United States Constitution is not applicable to the State of Ohio. King insists that R.C. 2923.16(B) violates both the Second Amendment and the Equal Protection Clause. King also claims that the trial court should have granted his motion to suppress.

{¶ 2} We conclude that the trial court did not abuse its discretion in questioning the witnesses in order to clarify the facts. We conclude that, although the trial court did incorrectly find the Second Amendment to be inapplicable to the states, the court correctly concluded that R.C. 2923.16(B) does not violate either the Second Amendment or the Equal Protection Clause. We conclude that the trial court did not err in overruling King's motion to suppress.

{¶ 3} The judgment of the trial court will be Affirmed.

I

{¶ 4} Very early one morning in October 2009, Dayton Police Officer Saunders stopped King's car for having an expired license plate. As soon as King stopped his car, he twisted around in his seat, reaching toward the back. Because of this movement, Officer Saunders called for backup, and Officers Meehan and Etyob arrived minutes later.

{¶ 5} Upon Officer Saunders's request, King displayed a valid driver's license. The passenger, who did not have any identification, was removed from the vehicle. As the passenger got out, Officer Meehan noticed something appeared to have been pushed under the floor mat, which was partially raised and flipped back. He looked under the mat and saw a metal box of the type that, in his experience, he recognized was frequently used to hold a gun. He asked King what the box was; King replied that it was open and the officer could look inside. Officer Meehan found a loaded magazine in the box, but no gun. Officer Meehan

asked King where the gun was, and King said it was behind him. King was removed from the car, and Officer Saunders found a loaded handgun inside a zipped case, sitting on top of a bag directly behind the driver's seat. King was placed under arrest.

{¶ 6} King testified at the suppression hearing. King explained that, as the officer started searching his car, he repeatedly asked the officer what he was looking for, but was ignored. King denied telling the officer he could open the lock box; instead, King offered to open the box for the officer, who declined. King was removed from his car and placed in the rear of a police cruiser while the officers continued to searched his car. He was then removed from the cruiser and handcuffed. One of the officers asked him where the gun was, and King said it was inside a zipped case, behind the driver's seat.

{¶ 7} King was indicted for Improperly Handling Firearms in a Motor Vehicle, a felony of the fourth degree, because he did not have a concealed-carry permit. He filed a motion to suppress and a motion to dismiss the charge. The trial court overruled both motions. King pled no contest and was sentenced to community control sanctions. From his conviction and sentence, King appeals.

II

{¶ 8} King's First Assignment of Error is as follows:

{¶ 9} "IT WAS PLAIN AND REVERSIBLE ERROR FOR THE TRIAL COURT JUDGE TO DEPART FROM HIS JUDICIAL FUNCTION AND ACT AS THE PROSECUTOR IN THIS CASE."

{¶ 10} In his First Assignment of Error, King claims that the trial court asked too many questions of the witnesses, and that the questions were of a leading nature, to the extent

that the court acted more as a prosecutor than as a judicial body. We disagree.

{¶ 11} At no time did King object to the trial court's questioning, thereby waiving all but plain error. *State v. Baston* (1999), 85 Ohio St.3d 418, 425. Plain error should be invoked with utmost caution, only under exceptional circumstances to prevent a manifest miscarriage of justice. *State v. Jenks* (1991), 61 Ohio St.3d 259, 282.

{¶ 12} Evid.R. 614(B) allows a trial judge to question witnesses, whether those witnesses are called by one of the parties, or by the court itself. "Absent a showing of bias, prejudice, or prodding of the witness to elicit partisan testimony, it is presumed that the trial court interrogated the witness in an impartial manner in an attempt to ascertain material fact or develop the truth." *State v. Blankenship* (1995), 102 Ohio App.3d 534, 548.

{¶ 13} The appropriate standard of review is whether the trial court abused its discretion in its questioning of the witnesses. *State v. Davis* (1992), 79 Ohio App.3d 450, 454. In this case, the trial court asked questions of all of the witnesses, and those questions were consistently directed toward clarification of the facts about which each witness had testified. There was nothing improper or biased about the court's questioning of the witnesses. Questions posed by a trial court for the purpose of clarification of material facts do not amount to improper examination. *City of Mentor v. Brancatelli* (Dec. 5, 1997), Lake App. No. 97-L-011 (citation omitted). We find no abuse of discretion.

{¶ 14} King's First Assignment of Error is overruled.

III

{¶ 15} King's Second, Third, and Fourth Assignments of Error are as follows:

{¶ 16} "IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO HOLD

THAT THE SECOND AMENDMENT TO THE FEDERAL CONSTITUTION DID NOT APPLY TO THE STATE OF OHIO.

{¶ 17} "IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO HOLD THAT THE STATUTE UNDER WHICH THE DEFENDANT WAS CHARGED WITH FELONY WAS NOT APPLIED UNCONSTITUTIONALLY UNDER THE SECOND AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION.

{¶ 18} "IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO HOLD THAT THE STATUTE UNDER WHICH THE DEFENDANT WAS CHARGED WITH FELONY WAS NOT APPLIED UNCONSTITUTIONALLY UNDER THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE FEDERAL CONSTITUTION."

{¶ 19} In his Second Assignment of Error, King maintains that the trial court erred in finding that the Second Amendment to the United States Constitution does not apply to the State of Ohio.  In his Third and Fourth Assignments of Error, King argues that R.C. 2923.16(B) violates the Second Amendment and the Equal Protection Clause.

{¶ 20} Subsequent to the trial court's decision overruling King's motion to dismiss, the United States Supreme Court decided *McDonald v. Chicago* (2010), 561 U.S. ___, 130 S.Ct. 3020, 177 L.Ed.2d 894, wherein the Court held that the Second Amendment right to keep and bear arms is applicable to the states by virtue of the Fourteenth Amendment. Therefore, to the extent that the trial court found  the Second Amendment was inapplicable to laws enacted by the State of Ohio, the court was in error.

{¶ 21} Nevertheless, the trial court went on to explain that even if the Second

Amendment did apply to the State of Ohio, R.C. 2923.16(B) does not violate the constitutional right to bear arms. A court "must presume the constitutionality of lawfully enacted legislation." *Klein v. Leis,* 99 Ohio St.3d 537, 2003-Ohio-4779, ¶4, quoting *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 38. (Additional citations omitted.) Therefore, the legislation " 'will not be invalidated unless the challenger establishes that is unconstitutional beyond a reasonable doubt.' " Id., quoting *Arnold,* supra, at 39. (Additional citations omitted.)

{¶ 22} The right to bear arms is a fundamental right. See, e.g., *McDonald,* supra, 130 S.Ct. at 3036-37, citing *Dist. of Columbia v. Heller* (2008), 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637. See, also, *Arnold,* supra, at 46. However, that right is not unlimited. *Heller,* supra. See, also, *Klein,* supra, at ¶¶7-8. Regulations regarding the manner in which weapons may be carried involve the police power of the state. *Klein,* supra, at ¶13, citing *State v. Nieto* (1920), 101 Ohio St. 409, 413; *Arnold,* supra, at 47. Such regulations are constitutionally permissible if they impose reasonable limitations upon an individual's right to bear arms. Id., at ¶14, citing *Arnold,* supra, at 47-48.

{¶ 23} King was convicted of Improperly Handling Firearms in a Motor Vehicle, in violation of R.C. 2923.16(B), which states: "No person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." R.C. 2923.16(B) does not prohibit the transportation of all guns in a motor vehicle. Instead, the statute limits an individual's right to transport a loaded gun within reach of the driver or any passenger. These limits are both appropriate and reasonable.

**{¶ 24}** Regarding his Second Amendment challenge, King argues that because the United States Supreme Court did not expressly state in *McDonald,* supra, that the states may restrict an individual's right to transport firearms in a motor vehicle, any such restriction is unconstitutional. To the extent that the *McDonald* Court indicated there are five categories of gun regulations permitted to the states, the Court was referring to its earlier holding in *Heller,* supra, wherein the Court stated, "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sales of arms." *Heller,* 554 U.S. 570, at 626-27. However, the Court also explained "[w]e identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." Id. at n 26. Thus, contrary to King's assertion, the Court's failure to include restrictions on transport of firearms in a motor vehicle within the listed categories of permissible gun regulations does not mean that a restriction of that type is necessarily unconstitutional.

**{¶ 25}** Section 4, Article I of the Ohio Constitution states: "The people have the right to bear arms for their defense and security * * *." Interpreting Ohio's Constitution, the Supreme Court of Ohio has held that R.C. 2923.16(B) does not constitutionally infringe on an individual's right to bear arms. *Klein,* 2003-Ohio-4779, at ¶3. We see no reason for a different conclusion when applying the Second Amendment of the United States Constitution.

**{¶ 26}** As for his Equal Protection challenge, King contends that R.C. 2923.16 violates the Equal Protection Clause because it imposes a more severe penalty for violators

who do not possess a concealed carry permit than for those who do. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws. This clause prohibits states from arbitrarily treating similarly situated people differently under the laws. *State v. Williams,* 88 Ohio St.3d 513, 530, 2000-Ohio-428, citing *Harper v. Virginia State Bd. of Elections* (1966), 383 U.S. 663, 681, 86 S.Ct. 1079, 16 L.Ed.2d 169.

{¶ 27} In regard to the degree of crime, R.C. 2923.16(I) distinguishes between people who possess concealed-carry permits from those who do not. Despite King's contentions to the contrary, as a non-permit holder, King is not similarly situated to a permit holder. One who has obtained a permit has successfully completed firearm training and has been fingerprinted and undergone a background check. It is logical to conclude that a permit holder will pose less of a threat to public safety than a non-permit holder, and therefore be deserving of a lesser punishment than a non-permit holder.

{¶ 28} Both the limitations on transporting a loaded firearm in a motor vehicle and the different treatment of those found in violation of the statute who have a concealed-carry permit as contrasted with those who do not, are rationally related to a legitimate government interest in safety – the safety of the person possessing the firearm, the safety of other passengers in the vehicle, the safety of people in other cars on the roadway, and the safety of police officers who encounter these individuals. See, e.g., *State v. Brown* 168 Ohio App.3d 314, 2006-Ohio-4174; *State v. White* (March 28, 1997), Marion App. No. 9-96-66.

{¶ 29} King's Second, Third, and Fourth Assignments of Error are overruled.

IV

{¶ 30} King's Fifth Assignment of Error is as follows:

{¶ 31} "IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO OVERRULE THE MOTION TO SUPPRESS EVIDENCE MADE BY DEFENDANT IN THIS CASE."

{¶ 32} In his Fifth assignment of Error, King insists that the trial court should have granted his motion to suppress. King does not dispute that Officer Saunders was justified in stopping him for having an expired license plate, but he insists that his movements offered an insufficient basis for searching his vehicle.

{¶ 33} When assessing a motion to suppress, the trial court is the finder of fact, judging the credibility of witnesses and the weight of evidence. *State v. Jackson,* Butler App. No. CA2002-01-013, 2002-Ohio-5138, ¶ 11, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 20. An appellate court must rely on those findings and determine " 'without deference to the trial court, whether the court has applied the appropriate legal standard.' " Id., quoting *State v. Anderson* (1995), 100 Ohio App.3d 688, 691. When the trial court's ruling on a motion to suppress is supported by competent, credible evidence, an appellate court may not disturb that ruling. Id., citing *State v. Retherford* (1994), 93 Ohio App.3d 586.

{¶ 34} When King stopped his car, he was twisting in his seat, as if reaching into the back. This caused Officer Saunders to call for backup, not to search the car. After Officer Meehan saw the metal box as the passenger exited the vehicle, Officer Meehan asked King what the box was. King told him that it was open and he could look inside. Officer Meehan found a loaded magazine therein. Officer Meehan asked King, who was still in the driver's seat, where the gun was, and King admitted that it was behind him.

**{¶ 35}** As related to Officer Meehan's search of the metal box, the trial court properly found that King had consented to the search. Police officers "do not need a warrant, probable cause, or even a reasonable, articulable suspicion to conduct a search when a suspect voluntarily consents to the search." *State v. Riggins,* Hamilton App. No. C-030626, 2004-Ohio-4247, ¶11, citing *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854; *State v. Comen* (1990), 50 Ohio St.3d 206, 211.

**{¶ 36}** When there is an objectively reasonable need to protect the police or the public from an immediate danger posed by a weapon, officers may ask questions reasonably related to securing their safety prior to advising an individual of his *Miranda* rights. *State v. Nelson,* Montgomery App. No. 22718, 2009-Ohio-2546, ¶45, citing *State v. Jergens* (Sept. 3, 1993), Montgomery App. No. 13294, *State v. Strozier,* 172 Ohio App.3d 780, 2007-Ohio-4575, ¶25. Once Officer Meehan found the loaded magazine, the public safety exception allowed him to ask King about the location of the gun, in order to ensure the safety of all involved. *Nelson,* supra, at ¶¶ 44-45 (citations omitted).

**{¶ 37}** Furthermore, in order to ensure the safety of the police officers, once King had admitted that there was a gun behind his seat, the officers were entitled to conduct a protective sweep of the vehicle in order to secure the weapon. *Michigan v. Long* (1983), 463 U.S. 1032, 1049-50,103 S.Ct. 3469, 77 L.Ed.2d 1201. See also, *Nelson,* supra, at ¶¶ 46-47, citing *Long,* supra; *United States v. Ross* (1982), 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572. King's statement gave the officers probable cause to believe that King's car unlawfully contained a firearm within reach of the driver or passenger, in violation of R.C. 2923.16(B). Id.

**{¶ 38}** We also note that the gun was located about fifteen minutes after the stop

occurred, and Officer Saunders testified that generally a traffic stop lasts fifteen minutes. Thus, the stop was not prolonged.   See, e.g., *Nelson,* supra, at ¶¶ 36-37, citations omitted.

{¶ 39} King's Fifth Assignment of Error is overruled.

V

{¶ 40} All of King's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

FROELICH and HALL, JJ., concur.

Copies mailed to:

Mathias H. Heck
Andrew T. French
Herbert Creech
Hon. Michael Tucker