[Cite as *State v. Johnson*, 2014-Ohio-2815.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                           :

    Plaintiff-Appellee              :             C.A. CASE NO.    25773

v.                                      :             T.C. NO.    12CR1381

CHARLIE JOHNNY JOHNSON                  :             (Criminal appeal from
                                                      Common Pleas Court)

    Defendant-Appellant             :

                                        :

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____27th_____ day of _____June_____, 2014.

. . . . . . . . . .

MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

SCOTT A. ASHELMAN, Atty. Reg. No. 0074325, 703 Liberty Tower, 120 W. Second Street, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

    **{¶ 1}**   Defendant-appellant Charlie J. Johnson appeals from his conviction and

sentence for one count of carrying a concealed weapon (CCW), in violation of R.C. 2923.12(A)(2), a felony of the fourth degree; and one count of improper handling of a firearm in a motor vehicle (loaded/no license), in violation of R.C. 2923.16(B), also a felony of the fourth degree. Johnson filed a timely notice of appeal with this Court on May 28, 2013.

{¶ 2} The incident which forms the basis for the instant appeal occurred on May 6, 2012, at approximately 12:20 a.m. when Johnson was driving northbound on State Route 741. Sergeant Mike Keegan of the Moraine Police Department was also driving northbound on S.R. 741 in a marked police blazer. Sgt. Keegan witnessed Johnson, who was driving a 2002 Chevrolet pickup truck, execute an illegal U-turn at the intersection of S.R. 741 and South Dixie, strike the curb, and then proceed to pull into the parking lot of a Sunoco gas station. Johnson committed the U-turn while still in the City of Moraine, Ohio. The Sunoco gas station, however, was located just inside the city limits of West Carrollton, Ohio. Sgt. Keegan pulled into the Sunoco parking lot and initiated a traffic stop of Johnson's vehicle.

{¶ 3} Immediately upon being pulled over, Johnson exited his truck. Sgt. Keegan ordered Johnson back into his vehicle in order to run his plates. Sgt. Keegan testified that this is routine procedure during a traffic stop in order to determine if Johnson potentially had a concealed carry weapon license or if he had any other outstanding warrants against him. Sgt. Keegan then approached Johnson as he was sitting in the driver's seat of the vehicle and told him that the reason for the stop was for an improper U-turn and for striking the curb.

{¶ 4} While speaking with Johnson, Sgt. Keegan observed two closed handgun

ammunition boxes in the back seat area in plain view. Sgt. Keegan asked Johnson if there were any handguns in the vehicle. Johnson indicated that there were several handguns in the backseat area of the truck. Johnson also informed Sgt. Keegan that he did not have a permit for carrying a concealed weapon. Sgt Keegan returned to his vehicle and called for additional officers to respond. Moraine Police Officers Henry and Fugate responded to the call.

{¶ 5} After the other officers arrived, Sgt. Keegan and Officer Fugate approached Johnson's vehicle and directed him to exit the vehicle. Johnson got out of the vehicle, and Sgt. Keegan began questioning him regarding whether more weapons were present in the vehicle. Johnson responded that he had several knives about his person. The officers disarmed Johnson, handcuffed him, and placed him under arrest for carrying concealed weapons.

{¶ 6} Once Johnson was in custody, Sgt. Keegan and the other officers searched his vehicle. The search yielded several more knives, as well as several handguns and a 12-gauge shotgun. Officer Fugate read Johnson his *Miranda* rights and Johnson stated that he understood his rights and waived them. Upon being questioned regarding the presence of the guns, Johnson admitted that the guns were loaded, stating, "What's the point of having a gun if it's not loaded." Johnson also explained that he did not have a CCW permit because he knew that police officers would be more likely to pull him over if they ran his plates and discovered that he had a CCW permit. Upon further examination, the police officers found that all of the guns taken from Johnson's vehicle were, in fact, loaded.

{¶ 7} On May 31, 2012, Johnson was indicted for five counts of carrying

concealed weapons (loaded/ready at hand), and five counts of improperly handling firearms in a motor vehicle (loaded/no license). On August 7, 2012, Johnson filed a motion to suppress all physical and testimonial evidence gathered as a result of the stop of his vehicle. After an evidentiary hearing held on September 6, 2012, the trial court overruled Johnson's motion to suppress. Johnson filed a motion to dismiss the indictment on September 24, 2012, and shortly thereafter the State responded with a memorandum contra on October 30, 2012. The trial court overruled Johnson's motion to dismiss in a decision and entry issued on November 9, 2012.

{¶ 8} On January 28, 2013, Johnson waived a jury, and the matter proceeded to a bench trial on February 15, 2013. At the conclusion of the State's case, it dismissed Count V of the indictment for carrying a concealed weapon. The trial court subsequently found Johnson guilty of four counts of carrying a concealed weapon and four counts of improperly handling of firearms in a motor vehicle. The trial court found Johnson not guilty of Count X of the indictment for improperly handling of firearms in a motor vehicle. The trial court merged Counts I-IV, and Counts VI-IX. On the remaining two counts, Johnson was sentenced to community control sanctions for a period not to exceed five years.

{¶ 9} It is from this judgment that Johnson now appeals.

{¶ 10} Johnson's first assignment of error is as follows:

{¶ 11} "THE LANGUAGE OF OHIO REVISED CODE SECTION § 2923.12(A) CONCERNING THE PHRASE 'READY AT HAND,' IS UNCONSTITUTIONALLY VOID FOR VAGUENESS; THUS, THE TRIAL COURT ERRED IN ITS RELIANCE UPON THAT STATUTE TO ARRIVE AT APPELLANT'S CONVICTION."

{¶ 12}   In his first assignment, Johnson contends that the phrase "ready at hand" as used in R.C. 2923.12 is unconstitutionally void for vagueness.   Therefore, Johnson argues that the trial court erred when it relied on that portion of the statute in order to find him guilty of carrying a concealed weapon.   Johnson also asserts that R.C. 2923.12 violates his Second Amendment right to bear arms.

{¶ 13}   R.C. 2923.12(A) states in pertinent part:

No person shall knowingly carry or have, concealed on the person's person or concealed *ready at hand*, any of the following:

(1) A deadly weapon other than a handgun;

(2) A handgun other than a dangerous ordnance;

(3) A dangerous ordnance. (Emphasis added)

{¶ 14}   Upon review, we reject Johnson's argument that R.C. 2923.12(A) is void for vagueness.   To establish that a statute is unconstitutionally vague, the challenging party must show that it is vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. *Cane Task Force v. Nahum*, 159 Ohio App.3d 579, 2005-Ohio-300, 824 N.E.2d 1019, at ¶ 14 (2d Dist.).   "[A] law will survive a void for vagueness challenge if it is written so that a person of common intelligence is able to ascertain what conduct is prohibited, and if the law provides sufficient standards to prevent arbitrary and discriminatory enforcement." *Klein v. Leis,* 99 Ohio St.3d 537, 2003-Ohio-4779, 795 N.E.2d 633, at ¶ 16, citing *State v. Williams*, 88 Ohio St.3d 513, 533, 728 N.E.2d 342 (2000).

{¶ 15}   "Ready at hand" has been defined as being conveniently accessible and

within immediate physical reach. *State v. Davis*, 115 Ohio St.3d 360, 363, 2007-Ohio-5025, 875 N.E.2d 80, at ¶29, quoting from *State v. Miller*, Montgomery App. No. 19589, 2003-Ohio-6239, at ¶14. Thus, R.C. 2923.12 is not void for vagueness. *Klein*, 99 Ohio St.3d 537, at ¶ 16. Rather, R.C. 2923.12, specifically the phrase "ready at hand," is "capable of being understood by a person of common intelligence and provide[s] sufficient standards to prevent arbitrary and discriminatory enforcement." *Id*.

{¶ 16} Johnson also asserts that the R.C. 2923.12 unreasonably interferes with his Second Amendment guarantee of the right to bear arms. Specifically, Johnson claims that R.C. 2923.12 does not inform him with enough particularity as to the circumstances wherein he can legally bear arms. This issue was also addressed by the Ohio Supreme Court in *Klein*:

> The General Assembly has determined that prohibiting the carrying of concealed weapons helps maintain an orderly and safe society. We conclude that the goal and the means used to attain it are reasonable. We hold that R.C. 2923.12 does not unconstitutionally infringe the right to bear arms; *there is no constitutional right to bear concealed weapons.*

*Id*. at ¶ 7.

{¶ 17} Accordingly, Johnson's Second Amendment right to bear arms is not infringed upon in this instance because there is no constitutional right to bear concealed weapons. Ohio courts have clearly and unequivocally defined when a firearm is considered "ready at hand" for the purpose of R.C. 2923.12. The record established that Sgt. Keegan discovered loaded firearms in Johnson's vehicle located behind the driver's seat, under the

driver's seat, in the center console, and draped over the passenger seats. Thus, pursuant to R.C. 2923.12, the firearms were "ready at hand," Johnson was properly found guilty.

{¶ 18} Johnson's first assignment of error is overruled.

{¶ 19} Johnson's second assignment of error is as follows:

{¶ 20} "THE ELEMENTS OF [O.R.C.] § 2923.12(C)(1)(C) AND [O.R.C.] § 2923.16(B) ARE IN CONFLICT, ONE SECTION PERMITTING CONDUCT PROSCRIBED BY THE OTHER. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS BASED UPON THAT CONFLICT, AND ERRED IN FINDING APPELLANT GUILTY IN LIGHT OF THE CONFLICT."

{¶ 21} In his second assignment, Johnson argues that R.C. 2923.16 and R.C. 2923.12 conflict in such a manner that Johnson could not conform his conduct to one statute without violating the other.

{¶ 22} R.C. 2923.16(B) provides in pertinent part:

(B) No person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle.

{¶ 23} Thus, R.C. 2923.16(B) does not prohibit the transportation of all guns in a motor vehicle. Rather, the statute simply limits an individual's right to transport a loaded gun within reach of the driver or any passenger. *State v. King*, 2d Dist. Montgomery No. 24141, 2011-Ohio-3417, ¶ 23.

{¶ 24} As previously noted, R.C. 2923.12 provides in pertinent part:

(A) No person shall knowingly carry or have, concealed on the

person's person or concealed ready at hand, any of the following:

(1) A deadly weapon other than a handgun;

(2) A handgun other than a dangerous ordnance;

(3) A dangerous ordnance.

{¶ 25}  The issue of a potential conflict between R.C. 2923.12 and R.C. 2923.16 was addressed in *Davis*, wherein the defendant was arrested for carrying a concealed weapon in a case discovered lying next to a box of ammunition. *Id.,* at 115 Ohio St.3d 360, ¶ 28. The defendant argued that he could not comply with R.C. 2923.16(C) without violating R.C. 2923.12. The Ohio Supreme Court stated as follows:

> There are three other means by which Davis could have transported the handgun without violating the statute.  The unloaded gun could have been in plain sight on a gun rack; outside the passenger compartment of his vehicle; or in plain sight, stripped or with the action open. Davis chose to have the unloaded weapon in a closed box at his feet. That action alone complied with R.C. 2923.16 and would not violate R.C. 2923.12 unless the weapon was "ready at hand."  It was Davis' decision to include a loaded magazine in the closed box, in close proximity to the handgun and himself, that caused Davis to be in violation of R.C. 2923.12(A)(2).

*Id.*, at ¶ 26.

{¶ 26}  Furthermore, an examination of the elements of R.C. 2923.12 and R.C. 2923.16 demonstrates that the two statutes are not in conflict with one another.  The violation of the CCW statute, R.C. 2923.12, does not automatically result in the violation of

the improper handling of firearms in a motor vehicle statute, R.C. 2923.16. In *State v. Baker*, 12th Dist. Warren No. CA96-12-123, 1997 WL 473620 (August 18, 1997), the Twelfth Appellate District found as follows:

A comparison of the elements for carrying concealed weapons, R.C. 2923.12, and improperly handling firearms in a motor vehicle, R.C. 2923.16, also reveals that these crimes are not allied offenses of similar import. R.C. 2923.12 does not require proof that the defendant possessed a loaded firearm while inside a motor vehicle in the manner prohibited by R.C. 2923.16.. Further, concealment is not an element of R.C. 2923.16. Finally, since R.C. 2923.12 applies to any deadly weapon or dangerous ordnance while 2923.16 only applies to loaded firearms, the categories of weapons covered by R.C. 2923.12 are broader than those of R.C. 2923.16. Therefore, since the elements of carrying a concealed weapon and improperly handling firearms in a motor vehicle do not correspond to such a degree that commission of one offense will result in the commission of the other, we conclude that these offenses are not allied offenses of similar import under R.C. 2941.25(A).

{¶ 27} In the instant case, Johnson was found to have four loaded guns concealed in the interior compartment of the vehicle, each gun ready at hand or easily accessible to him. Johnson was, therefore, in violation of R.C. 2923.12(A)(2) and R.C. 2923.16(B). Johnson, however, could have followed R.C. 2923.16(C), which provides other means by which he could have transported an unloaded handgun without violating the statute. Specifically, R.C. 2923.16 provides as follows:

(C) No person shall knowingly transport or have a firearm in a motor vehicle, unless the person may lawfully possess that firearm under applicable law of this state or the United States, the firearm is unloaded, and the firearm is carried in one of the following ways:(1) In a closed package, box, or case;(2) In a compartment that can be reached only by leaving the vehicle;(3) In plain sight and secured in a rack or holder made for the purpose.

{¶ 28} Had Johnson chosen to transport the loaded firearms in a box, that action would violate R.C. 2923.16(B), but not violate R.C. 2923.12, unless the weapon was "ready at hand" as interpreted in *Davis* and *Miller.* Furthermore, if Johnson had transported the guns unloaded on the passenger seat but had a box of ammunition in his pocket, he would be guilty of carrying a concealed weapon under R.C. 2923.12(A)(2), but not guilty of improperly handling firearms under R.C. 2923.16(B).

{¶ 29} Accordingly, Johnson could comply with R.C. 2923.16 by not having a loaded weapon in the vehicle, but still be found in violation of R.C. 2923.12(A)(2) if he had ammunition to the weapon "ready at hand." However, Johnson, for example, could have the weapons present in his vehicle unloaded in a locked box, and have the ammunition in the back seat of the truck on the bench, thereby conforming his conduct to both R.C. 2923.12 and R.C. 2923.16 simultaneously. In the alternative, Johnson could have transported the gun on a gun rack in plain sight, with the ammunition on the back bench of the truck and complied with both statutes. Johnson, however, eschewed all of his legal options for transporting his handguns. Rather, Johnson chose to transport loaded firearms which were placed in his vehicle so as to be "ready at hand."

{¶ 30} Johnson also asserts that R.C. 2923.12(C)(1)(c) is an exception that should

be considered an additional element which the State had to prove to sustain his convictions for CCW. Specifically, Johnson argues that pursuant to R.C. 2923.12(C)(1)(c), the State had to prove beyond a reasonable doubt that he was transporting the loaded, concealed firearms in his vehicle for an unlawful purpose.

{¶ 31} R.C. 2923.12(C)(1)(c) provides in pertinent part:

(C)(1) This section does not apply to any of the following:

\*\*\*

(c) A person's transportation or storage of a firearm, other than a firearm described in divisions (G) to (M) of section 2923.11 of the Revised Code, in a motor vehicle for any lawful purpose if the firearm is not on the actor's person; \*\*\*.

{¶ 32 } Conversely, the State argues that Johnson failed to assert R.C. 2923.12(C)(1)(c) as an affirmative defense. "The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is on the accused." R.C. 2901.05(A). An affirmative defense is defined as either "[a] defense expressly designated as affirmative," or "[a] defense involving an excuse or justification peculiarly within the knowledge of the accused, on which the accused can fairly be required to adduce supporting evidence." R.C. 2901.05(D)(1)(a); R.C. 2901.05(D)(1)(b). The State points out that only Johnson would know why he was transporting the firearms loaded in his vehicle. If Johnson was transporting the loaded and concealed firearms for a lawful purpose, it would serve as an excuse or justification peculiarly within his own personal knowledge. Thus, it was

incumbent upon Johnson to adduce evidence which supported the affirmative defense that he was transporting the loaded, concealed firearms with a lawful purpose. The State, on the other hand, only had to prove beyond a reasonable doubt that Johnson was transporting loaded, concealed weapons which were "ready at hand."

{¶ 33} Johnson's second assignment of error is overruled.

{¶ 34} Johnson's third and final assignment of error is as follows:

{¶ 35} "THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION TO SUPPRESS EVIDENCE, BECAUSE THE AGENTS OF THE MORAINE POLICE DEPARTMENT VIOLATED APPELLANT'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS."

{¶ 36} In his final assignment, Johnson contends that the trial court erred when it overruled his motion to suppress because his traffic stop and subsequent arrest took place outside the jurisdiction of the City of Moraine police, thereby rendering it statutorily illegal and unreasonable.

{¶ 37} Specifically, Johnson argues that the Moraine police violated the extraterritorial arrest statute, R.C. 2935.03(D), which states in pertinent part:

> (D) If a sheriff, deputy sheriff . . . municipal police officer . . . is authorized . . . to arrest and detain, within . . . the territorial jurisdiction of the peace officer, a person until a warrant can be obtained, the peace officer, outside the limits of that territory, may pursue, arrest, and detain that person until a warrant can be obtained if all of the following apply:
>
> (1) The pursuit takes place without unreasonable delay after the

offense is committed;

(2) The pursuit is initiated within the . . . territorial jurisdiction of the peace officer;

(3) The offense involved is a felony, a misdemeanor of the first degree or a substantially equivalent municipal ordinance, a misdemeanor of the second degree or a substantially equivalent municipal ordinance, or any offense for which points are chargeable pursuant to R.C. 4510.036.

{¶ 38} In order to ascertain whether a traffic stop violates the Fourth Amendment, the officer's actions must be observed objectively and in light of what was known to the officer at the time of the stop. *Dayton v. Erickson*, 76 Ohio St.3d 3, 6, 665 N.E.2d 1091 (1996). An officer's subjective state of mind is not relevant. *Id*. Specifically, the Supreme Court held:

[W]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as suspicion that the violator was engaging in more nefarious criminal activity.

*Id*. at 11, 665 N.E.2d 1091.

{¶ 39} Johnson properly asserts in his brief that even though an extraterritorial stop is a violation of state law, it is not a per se constitutional violation, which renders evidence obtained from such a stop subject to the exclusionary rule. *Kettering v. Hollen*, 65 Ohio St.2d 232, 234-235, 416 N.E.2d 598, 600 (1980). The exclusionary rule does not apply to

evidence obtained incident to police conduct in violation of state law but not in violation of constitutional rights. *State v. Henderson*, 2d Dist. Montgomery No. 22831, 2009-Ohio-4122, citing *State v. Wiedeman*, 94 Ohio St.3d 501, 2002–Ohio–1484, 764 N.E.2d 997.

**{¶ 40}** In *Henderson* at ¶ 11, we stated the following:

> The particular limitations that R.C. 2935.03(D) imposes on the authority of an officer to pursue, detain, and arrest a person outside the territorial jurisdiction in which the officer is appointed are administrative restrictions. A violation of those restrictions does not implicate that person's liberty interests, so as to result in a violation of his due process rights protected by the Fourteenth Amendment. Neither does a violation of R.C. 2935.03(D), in and of itself, constitute a Fourth Amendment violation for which suppression of evidence is authorized. (Citations omitted)

**{¶ 41}** In support of his argument that the Moraine police violated R.C. 2935.03(D), Johnson relies on *State v. Fitzpatrick*, 152 Ohio App.3d 122, 2003-Ohio-1405, 786 N.E.2d 942 (6th Dist.). In *Fitzpatrick*, a police officer outside of his jurisdiction witnessed a car with illegal plates driving at a low speed. *Id.* at ¶ 4. Upon initiating a stop of the vehicle, the officer discovered that the defendant was intoxicated. The defendant was arrested and ultimately convicted of driving while under the influence of alcohol. *Id.* at ¶ 1. In reversing the defendant's conviction, the court relied upon the fact that the defendant's driving manner did not appear to impose a danger to any other motorists. *Id.* at ¶ 14. Thus, the officer had no reasonable suspicion of criminal activity by the defendant until he left his jurisdiction. *Id.* Because the violation did not present an imminent safety danger to other motorists, the

court in *Fitzpatrick* could articulate no reason why the officer could not have notified police officers with jurisdictional authority to the general location of the vehicle so they could stop the defendant. *Id.* *Fitzpatrick* is distinguishable from the instant case.

**{¶ 42}** Initially, we note that R.C. 2935.03(D) provides for an arrest outside the limits of the subdivision if pursuit is initiated within the limits of the political subdivision in which the peace officer is appointed. *State v. Pierce,* 2d Dist. Montgomery No. 19926, 2003-Ohio-7244, citing State *v. Coppock*, 103 Ohio App. 3d 405, 659 N.E.2d 837 (2d Dist.1995). In *Coppock,* we held that a stop or arrest in violation of the territorial limits imposed by statute upon a police officer's arrest powers, is not a constitutional violation, and will not, therefore, support the extraordinary remedy of exclusion of evidence obtained as a result of an unlawful stop or arrest. Sgt. Keegan observed Johnson perform an illegal u-turn and run over a curb in his territorial jurisdiction. Clearly, Sgt. Keegan had a lawful basis to initiate a traffic stop of Johnson. The only impropriety with the stop was its alleged extra-territorial nature. *Pierce*, 2003-Ohio-7244. This was, at most, a statutory violation, not a constitutional violation, and Johnson was not entitled to the application of the exclusionary rule with respect to the loaded, concealed weapons found in his vehicle. *Wiedeman*, 94 Ohio St.3d 501, 2002–Ohio–1484, 764 N.E.2d 997. The State's interest in promoting public safety by stopping and detaining persons driving erratically outweighs the momentary restriction of the driver's rights. *Id.* at 506.

**{¶ 43}** Johnson's third and final assignment of error is overruled.

**{¶ 44}** All of Johnson's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

Michele D. Phipps
Scott A. Ashelman
Hon. Michael W. Krumholtz