The STATE of Ohio, Appellee,

v.

WATSON, Appellant.

[Cite as *State v. Watson,* 157 Ohio App.3d 217, 2004-Ohio-2628.]

Court of Appeals of Ohio,
Fourth District, Gallia County.

No. 03–CA–17.

Decided May 17, 2004.

Douglas M. Cowles, for appellee.

William N. Eachus, for appellant.

KLATT, Judge.

{¶ 1} The Gallipolis Municipal Court convicted defendant-appellant, Roger A. Watson, of one count of improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16(C), a misdemeanor of the fourth degree.[1] For the following reasons, we affirm.

---

1. Judges Klatt, Peggy Bryant, and Brown of the Tenth District Court of Appeals are sitting by assignment on this appeal.

{¶ 2} On December 23, 2002, Lynn Mingus, a 911 operator for Gallia County, received an emergency call from a "Mr. Hager." Based upon the information Mingus collected during that call, she contacted Bill Brown, the Gallipolis Police Department dispatching officer, and told him that a man was at Southern Auto Sales ("Southern") with a gun. Brown dispatched two police officers, Chief Roger Brandeberry and Officer Jeff Boyer, to Southern. Before the officers reached the scene, Brown relayed to them that the caller had identified the individual with the gun as defendant and that defendant was leaving Southern in a maroon Cadillac.

{¶ 3} While approaching Southern, Chief Brandeberry saw defendant driving his maroon Cadillac out of the Southern driveway onto Second Avenue. Chief Brandeberry pulled his vehicle in front of defendant's Cadillac, exited his vehicle, and began walking toward the Cadillac. As Chief Brandeberry walked in front of the Cadillac, he saw defendant moving his left hand between the bottom of the driver's seat and the door. Because Chief Brandeberry could not see what defendant was doing with his left hand, he pulled open the driver's side door. Chief Brandeberry then saw a loaded gun magazine lying between the driver's seat and the door. Chief Brandeberry asked defendant to step out of the Cadillac, and he retrieved the magazine.

{¶ 4} After defendant had exited the Cadillac, Chief Brandeberry noticed that defendant had some blood on his face and that he appeared stunned. Chief Brandeberry turned to Officer Boyer, who was standing near the front driver's side of the Cadillac, and asked him to pat down defendant. Chief Brandeberry then asked defendant whether there was a gun in the Cadillac, but defendant did not answer.

{¶ 5} While Officer Boyer patted down defendant, Chief Brandeberry stood at the open driver's side door and bent over to see inside the Cadillac. Once Chief Brandeberry leaned into the Cadillac, he could see a gun under the edge of the passenger seat closest to the driver. Chief Brandeberry retrieved the gun and determined that it was unloaded. Chief Brandeberry then arrested defendant for improperly handling a firearm in a motor vehicle, a violation of R.C. 2923.16(C).

{¶ 6} During the pendency of the criminal proceedings, defendant made two motions: (1) a motion to suppress the items seized from defendant's vehicle, and (2) a motion to dismiss based upon the unconstitutionality of R.C. 2923.16(C). On February 10, 2003, the trial court held a hearing on defendant's motion to suppress. During that hearing, the trial court heard testimony from Mingus, Brown, Chief Brandeberry, and Officer Boyer. On March 14, 2003, the trial court issued a decision overruling defendant's motion to suppress.

{¶ 7} On June 10, 2003, defendant pled no contest and, subsequently, the trial court convicted defendant of violating R.C. 2923.16(C) and sentenced him to pay a fine of $100 and court costs. Defendant then appealed.

{¶ 8} On appeal, defendant assigns the following errors:

"[1.] The trial court erred to the prejudice of the defendant by denying his motion to suppress. The search of the defendant's automobile, after the magazine was discovered and the defendant was away from the car and under police control, lacked probable cause.

"[2.] The trial court erred to the prejudice of the defendant by denying his motion to dismiss. Section 2923.16(C) of the Ohio Revised Code is unconstitutional under Section 4, Article I of the Ohio Constitution and is also unconstitutionally vague."

{¶ 9} By defendant's first assignment of error, he argues that the trial court erred by not excluding the gun from evidence, as it was discovered during an illegal search of defendant's vehicle. Specifically, defendant maintains that the state cannot justify Chief Brandeberry's search under the principles set forth in *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 10} A challenge to a trial court's decision on a motion to suppress presents an appellate court with a mixed question of law and fact. *State v. Long* (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1. When ruling on a motion to suppress, a trial court assumes the role of trier of fact, and it is in the best position to evaluate the evidence and the credibility of the witnesses. *State v. Hunter*, 151 Ohio App.3d 276, 2002-Ohio-7326, 783 N.E.2d 991, at ¶ 24. Accordingly, an appellate court must accept the trial court's factual findings absent clear error and give due deference to the inferences the trial court draws from the facts. *State v. Booth*, 151 Ohio App.3d 635, 2003-Ohio-829, 784 N.E.2d 1259, at ¶ 12, quoting *Ornelas v. United States* (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911. However, an appellate court determines de novo whether the trial court properly applied the law to the facts of the case. *State v. Aguirre*, Gallia App. No. 03CA5, 2003-Ohio-4909, 2003 WL 22136234, at ¶ 21.

{¶ 11} Searches conducted without a warrant are per se unreasonable under the Fourth Amendment, subject only to a few well-defined exceptions. *State v. Kessler* (1978), 53 Ohio St.2d 204, 207, 373 N.E.2d 1252. The United States Supreme Court recognized one of these exceptions in *Terry*, supra, 392 U.S. at 27, 88 S.Ct. 1868, 20 L.Ed.2d 889, in which the court held that a police officer may make a limited search of a suspect in order to protect himself and the public, if he has a reasonable suspicion that he is dealing with a dangerous and armed individual. Although *Terry* dealt only with a body search, the court later expanded the scope of permissible searches to include automobile interiors. In

*Michigan v. Long* (1983), 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201, the court held:

"[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. * * * '[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' " Id., 463 U.S. at 1049–1050, 103 S.Ct. 3469, 77 L.Ed.2d 1201, quoting *Terry*, supra, 392 U.S. at 21, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 12} Additionally, the Supreme Court of Ohio has also applied *Terry* to allow a protective search of a automobile. In *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph two of the syllabus, the court held that, when a police officer has a reasonable suspicion that an individual is armed, the officer may conduct a protective search for his and others' safety. Further, the court concluded that, in order to prove that a police officer had such a reasonable suspicion, the state must present specific and articulable facts that, when considered objectively, warrant a person of reasonable caution to believe that a search was appropriate. Id., 37 Ohio St.3d at 178–179, 524 N.E.2d 489.

{¶ 13} In the case at bar, prior to instigating his search, Chief Brandeberry was informed that defendant had in his possession a gun. Upon arriving at Southern, he observed defendant moving his left hand between the bottom of the driver's seat and the door. Then, when Chief Brandeberry opened the Cadillac door, he found a loaded magazine between the seat and door. Together, these facts establish a reasonable suspicion that defendant was armed and dangerous, and, thus, a protective search of the Cadillac was warranted.

{¶ 14} Defendant, however, argues that the search was not necessary to ensure the officers' and others' safety because, at the time of the search, defendant was under Officer Boyer's control and not in immediate control of the gun. We disagree.

{¶ 15} The United States Supreme Court rejected this argument in *Long*, supra, 463 U.S. at 1051–1052, 103 S.Ct. 3469, 77 L.Ed.2d 1201, noting: "Just as a *Terry* suspect on the street may, despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a *Terry* suspect in Long's position break away from police control and retrieve a weapon from his automobile. * * * In addition, if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside. * * * Or, as here, the suspect may be permitted to reenter the

vehicle before the *Terry* investigation is over, and again, may have access to weapons. \* \* \*" (Citations omitted.) Thus, in order to ensure officers' and others' safety, "a *Terry* search of a vehicle's interior is permissible even after the un-arrested occupants have been removed from the vehicle" and are under police control. *United States v. Rowland* (C.A.8, 2003), 341 F.3d 774, 783. See *Bobo*, supra, 37 Ohio St.3d at 177, 524 N.E.2d 489 (defendant was outside the vehicle under the control of police officers); *State v. Phipps* (Aug. 6, 1990), Clermont App. No. CA89–07–067, 1990 WL 111131 (defendant was outside the vehicle lying face down on the ground); *United States v. Brown* (C.A.7, 1998), 133 F.3d 993, 998–999 (defendant was standing next to the vehicle); *United States v. Carthorn* (Sept. 8, 1994), C.A.6 No. 93–6593, 1994 WL 487336 (defendant was standing outside the vehicle under the control of four police officers).

{¶ 16} Accordingly, Chief Brandeberry could legally search defendant's vehicle, even though defendant was standing outside his vehicle under the control of Officer Boyer. From defendant's position next to the open Cadillac door, he could have lunged for a weapon. Further, had Chief Brandeberry not searched the vehicle and not found the gun, Chief Brandeberry would have had no reason to arrest defendant. Thus, Chief Brandeberry would have permitted defendant to leave and, presumably, to reenter his vehicle. At that point, defendant would have had immediate access to the gun. Under these circumstances, it was appropriate to conduct a search of defendant's vehicle to ensure the safety of the officers and others.

{¶ 17} Defendant next argues that Chief Brandeberry did not have the kind of reasonable suspicion necessary to justify a search for weapons. Defendant asserts that Chief Brandeberry's actions when he first arrived on the scene— walking in front of defendant's windshield and not drawing his weapon—demonstrate that Chief Brandeberry did not suspect that defendant was armed and dangerous. However, it was not until Chief Brandeberry was crossing in front of the Cadillac that he saw defendant furtively moving his left hand between the seat and car door. Moreover, Chief Brandeberry did not know that defendant possessed a loaded magazine until Chief Brandeberry opened the Cadillac door. Based upon these two observations, made as or after Chief Brandeberry approached the Cadillac, a person of reasonable caution would believe that defendant was armed and dangerous. Therefore, Chief Brandeberry's initial action or inaction does not render the protective search invalid.

{¶ 18} Accordingly, we overrule defendant's first assignment of error.

{¶ 19} By defendant's second assignment of error, he argues that R.C. 2923.16(C), the statute he was convicted of violating, is unconstitutional because it impermissibly restricts his constitutional right to bear arms. Further, defendant

argues that the applicable affirmative defenses allowed by R.C. 2923.16(C)(1) and (C)(2) are unconstitutionally vague.

{¶ 20} Defendant's arguments are based solely upon *Klein v. Leis*, 146 Ohio App.3d 526, 2002-Ohio-1634, 767 N.E.2d 286, which the Supreme Court of Ohio reversed days after defendant filed his appellate brief. *Klein v. Leis*, 99 Ohio St.3d 537, 2003-Ohio-4779, 795 N.E.2d 633. In *Klein*, the Supreme Court of Ohio explicitly rejected both of defendant's arguments, holding that "R.C. 2923.12(C) and 2923.16(B) and (C) do not unconstitutionally infringe the right to bear arms" and that "the affirmative defenses of R.C. 2923.12(C), which apply to R.C. 2923.12 and 2923.16(B) and (C), are not vague." Id. at ¶ 3, 18. Accordingly, we overrule appellant's second assignment of error.

{¶ 21} For the foregoing reasons, we overrule defendant's two assignments of error and affirm the judgment of the Gallipolis Municipal Court.

Judgment affirmed.

BRYANT and BROWN, JJ., concur.

WILLIAM A. KLATT, PEGGY BRYANT and SUSAN BROWN, JJ., of the Tenth Appellate District, sitting by assignment in the Fourth Appellate District.