[Cite as *State v. Robinson*, 2015-Ohio-4649.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2014-12-256 |
| - vs - | : | O P I N I O N<br>11/9/2015 |
| | : | |
| CHARLES DUANE ROBINSON, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2014-10-1523

Michael T. Gmoser, Butler County Prosecuting Attorney, Audra R. Adams, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

John T. Willard, P.O. Box 35, Hamilton, Ohio 45012, for defendant-appellant

**RINGLAND, J.**

{¶ 1} Defendant-appellant, Charles Duane Robinson, appeals a decision of the Butler County Court of Common Pleas convicting him of multiple weapons-related offenses. For the reasons outlined below, we affirm.

{¶ 2} In the early morning hours of September 25, 2014, Officer Mark Specht of the Middletown Police Department was dispatched to a local United Dairy Farmers ("UDF") to investigate a disturbance. When the officer arrived, he positioned his cruiser behind a white

Hyundai Sonata parked at one of the gas pumps. One man, later identified as Brandon Davis, was leaning against the driver's side of the vehicle near the open gas tank and appeared to be unconscious. Appellant was sitting in the passenger seat. A third man, Tyon Thomas, exited the UDF seconds before the officer arrived.

{¶ 3} According to his testimony, Officer Specht addressed appellant through the open driver's side window. Appellant was leaning forward and moving his right hand back and forth in between the seat and the passenger door. Wary of appellant's movements, Officer Specht told him to step out of the car. Appellant sternly refused at first. He eventually complied, reaching over with his left hand to open the passenger side door.

{¶ 4} A pat down yielded no weapons on appellant. When Officer Specht opened the passenger door, he found a Hi-Point .45-caliber handgun on the floor in between the passenger seat and the car door. The gun held three live rounds of ammunition. After securing the firearm, the officer placed appellant under arrest.

{¶ 5} Appellant was indicted on one count of carrying concealed weapons, one count of having weapons while under disability, and one count of improperly handling firearms in a motor vehicle. Following a jury trial, he was found guilty on all counts. The trial court sentenced appellant to 12 months imprisonment for carrying a concealed weapon and 36 months imprisonment for having a weapon while under disability to be served consecutive to the 12-month term. The court merged appellant's conviction for improperly handling firearms in a motor vehicle, finding it to be an allied offense of similar import. Appellant timely appeals, raising four assignments of error.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE STATUTES UNDER WHICH THE APPELLANT WAS CHARGED (R.C. 2913.12 A 2 AND 2923.13 A2) ARE UNCONSTITUTIONAL IN THAT THEY PURPORT TO AND DO PROHIBIT THE CONSTITUTIONAL RIGHT TO KEEP AND BEAR ARMS UNDER

THE 2ND AMENDMENT TO THE UNITED STATES CONSTITUTION. R.C. 2923.13 A2 ALSO VIOLATES THE DUE PROCESS CLAUSE UNDER THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION, IN THAT IT FAILS TO PROVIDE A PROCEDURE BY WHICH A PERSON CAN HAVE HIS FULL RIGHTS RESTORED AFTER TIME IS SERVED AND PROBATION IS COMPLETED. THE STATUTES IN QUESTION ALSO VIOLATE SECTION 4, ARTICLE I OF THE OHIO CONSTITUTION THAT ALLOWS WEAPONS FOR SELF-DEFENSE [sic].

{¶ 8} Appellant challenges the constitutionality of the statutes upon which his convictions were predicated, claiming they violate his right to keep and bear arms under the Second Amendment to the United States Constitution and Article I, Section 4 of the Ohio Constitution. Appellant also argues that his right to self-defense, implicit within these constitutional provisions, was infringed.

{¶ 9} Initially, we observe that appellant failed to raise any objections at trial regarding the constitutionality of the statutes in question. As a result, appellant has forfeited all but plain error. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 16; Crim.R. 52(B). Plain error exists where there is an obvious deviation from a legal rule which affected the defendant's substantial rights, or influenced the outcome of the proceeding. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68. Notice of plain error is taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶ 10} We begin by noting that legislative enactments enjoy a strong presumption of constitutional validity. *State v. Collier*, 62 Ohio St.3d 267, 269 (1991). In order to be declared unconstitutional, the legislation in controversy must be clearly incompatible with a specific constitutional provision. *State v. Carswell*, 117 Ohio St.3d 210, 2007-Ohio-3723, ¶ 7. The existence of a conflict must be demonstrated beyond a reasonable doubt, and the

burden lies with the proponent of the conflict. *Collier* at 269. We are mindful of these principles in analyzing whether the trial court plainly erred in convicting appellant of the allegedly unconstitutional offenses in the case at bar.

{¶ 11} The right to keep and bear arms is a fundamental right enshrined in federal and state constitutional law. The United States Supreme Court held that the Second Amendment to the United States Constitution confers an individual right to keep and bear arms in the landmark case of *District of Columbia v. Heller*, 554 U.S. 570, 959, 128 S.Ct. 2783 (2008). *See also McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 750, 130 S.Ct. 3020 (2010) (extending the Second Amendment right to bear arms to the states by way of the Due Process Clause of the Fourteenth Amendment). This right is subject to certain longstanding limitations. *Heller* at 626. As noted by the *Heller* court:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. * * * Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, *nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

(Emphasis added.) *Id.* at 626-27.

{¶ 12} Similarly, the right to keep and bear arms is not absolute under the Ohio Constitution. *State v. Taniguchi*, 74 Ohio St.3d 154, 157, 1995-Ohio-163 ("[i]t is basic hornbook law that the state under its police powers may impose restrictions on who may possess firearms"); *Arnold v. Cleveland*, 67 Ohio St.3d 35, 45-46 (1993) (the fundamental right to bear arms conferred by Section 4, Article I of the Ohio Constitution may be limited in furtherance of valid public safety interests). The Ohio Supreme Court distinguished between

the right to bear arms and the right to carry them concealed in *Klein v. Leis*, 99 Ohio St.3d 537, 2003-Ohio-4779. Rather than prohibiting the carrying of weapons entirely, the court reasoned, R.C. 2923.12 regulates the manner in which weapons can be carried. *Id.* at ¶ 13. In other words, "there is no constitutional right to bear *concealed* weapons." (Emphasis added.) *Id.* at ¶ 15. The court thereafter upheld the constitutionality of R.C. 2923.12, the concealed carry statute. *Id.*

{¶ 13} Although *Klein* preceded *Heller* and its progeny, the underlying rationale of *Klein* remains valid. Accordingly, we reaffirm that R.C. 2923.12 does not unconstitutionally infringe upon the right to keep and bear arms as guaranteed by federal and state constitutional law. *Id.* *See also State v. Campbell*, 1st Dist. Hamilton No. C-120871, 2013-Ohio-5612.

{¶ 14} Ohio's statutory prohibition against having weapons while under disability has also been declared constitutional by several appellate jurisdictions in Ohio, including this one. *State v. Winkelman*, 2 Ohio App.3d 465 (12th Dist.1981), paragraph one of the syllabus, overruled in part, *State v. Frederick*, 12th Dist. Butler Nos. CA88-07-111 and CA88-07-118, 1989 WL 80493, at *2-4 (July 17, 1989) (reversing *Winkelman* only insofar as it held that notice of disability flowing from a pending indictment is a prerequisite to conviction under R.C. 2923.13). *See also State v. Morris*, 11th Dist. Trumbull No. 2008-T-0110, 2009-Ohio-6033, ¶ 84-85; *State v. Thomas*, 5th Dist. Tuscarawas No. 2000AP 06 0046, 2001 WL 1789437, at *4 (Jan. 25, 2001); *State v. White*, 3d Dist. Marion No. 9-96-66, 1997 WL 180307, at *3 (Mar. 28, 1997); *State v. Johnson*, 1st Dist. Hamilton No. C-780305, 1979 WL 208723, at *2 (Mar. 21, 1979).

{¶ 15} While the fundamental right to bear arms demands reverence, it is well-established that this right is surrendered when one engages in violent felony activity. *Cf.*

*Heller*, 554 U.S. at 626-27. Appellant cites no poignant authority to support his assertion that we should upend this longstanding precedent post *Heller*. At trial, appellant stipulated that he had previously been convicted of a violent felony offense. It is thus undisputed that appellant was under disability at the time of the incident in question. Consequently, appellant was ineligible to carry a firearm while the disability remained intact.

{¶ 16} Contrary to appellant's assertions, the General Assembly provided a mechanism for relief from weapons disability. Appellant contends that R.C. 2923.13(A)(2) violates the Due Process Clause of the 14th Amendment to the United States Constitution because there is no hearing or other vehicle by which a person convicted of a felony can restore his right to carry a firearm subsequent to rehabilitation. Undeniably, R.C. 2923.14(A) provides for just such relief: "Any person who is prohibited from acquiring, having, carrying, or using firearms may apply to the court of common pleas in the county in which the person resides for relief from such prohibition." The record does not demonstrate that appellant availed himself of this legislative avenue for relief from disability. Because such a remedy is indeed available, appellant's due process argument is without merit. *In re Hensley*, 154 Ohio App.3d 210, 2003-Ohio-4619, ¶ 41 (12th Dist.).

{¶ 17} Finally, appellant submits that the ability to defend oneself while travelling by vehicle is inhibited by R.C. 2923.16(B), which limits access to weapons within a vehicle. Appellant urges that the constitutional reverence and safeguards afforded to the right of self-defense in the home should be extended to the right of self-defense in a vehicle.

{¶ 18} As recently observed by the Ninth District Court of Appeals, "[t]he precise scope of the Second Amendment guarantee remains in question." *State v. Glover*, 9th Dist. Summit No. 27307, 2015-Ohio-2751, ¶ 5, citing *Powell v. Tompkins*, 783 F.3d 332, 348 (1st Cir.2015). We shall assume, for the sake of discussion, that the right to bear arms extends to motor vehicles. Similar to the concealed carry statute, R.C. 2923.16 restricts the manner

in which firearms may be handled in a motor vehicle. *State v. King*, 2d Dist. Montgomery No. 24141, 2011-Ohio-3417, ¶ 25. The statute does not operate as a blanket prohibition on transporting firearms while travelling by vehicle. *Id.* Thus, R.C. 2923.16 does not unconstitutionally infringe upon the right to keep and bear arms. *Id. See also State v. Henderson*, 11th Dist. Portage No. 2010-P-0046, 2012-Ohio-1268, ¶ 55; *State v. Watson*, 157 Ohio App.3d 217, 2004-Ohio-2628, ¶ 20.

{¶ 19} We conclude that the constitutional challenges advanced by appellant do not satisfy the plain error standard. Appellant's first assignment of error is overruled.

{¶ 20} Assignment of Error No. 2:

{¶ 21} THE JUDGMENT AND THE CONVICTION IN THE INSTANT CASE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 22} Though worded in terms of manifest weight, the substance of appellant's argument contests his convictions solely on the grounds of insufficient evidence. Appellant claims that the record is devoid of evidence indicating he owned the firearm in question, such as fingerprints or DNA. Further, appellant submits that there was no evidence he owned the vehicle in which the firearm was found, nor that he knew the weapon was present.

{¶ 23} Whether a conviction is supported by evidence sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52. When addressing a sufficiency claim, a reviewing court examines the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶ 24} Appellant was convicted of carrying a concealed weapon in violation of R.C.

2923.12(A)(2), which provides that "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, * * * [a] handgun* * *[.]"

{¶ 25} Appellant was also convicted of having a weapon while under disability in violation of R.C. 2923.13(A)(2), which provides that, "[u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is under indictment for or has been convicted of any felony offense of violence* * *."

{¶ 26} Finally, appellant was convicted of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B), which provides that "[n]o person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle."

{¶ 27} Appellant stipulated to being under disability and to the operability of the gun. Furthermore, the concealed nature of the gun is clear from the record. Officer Specht testified that he could not see the gun while addressing appellant through the open driver's side window, and was only able to see it after he opened the passenger door. Hence, the elements at issue are appellant's knowledge, possession, and active concealment of the firearm.

{¶ 28} To act "knowingly" means that a person is aware his conduct will probably cause a certain result, or that certain circumstances probably exist. R.C. 2901.22(B). "When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." *Id.*

{¶ 29} Possession entails having control over an object. R.C. 2925.01(K). Circumstantial evidence of possession may adequately support a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State*

*v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 75. Circumstantial evidence holds the same probative value as direct evidence. *See State v. Crutchfield*, 12th Dist. Warren No. CA2005-11-121, 2006-Ohio-6549, ¶ 20.

{¶ 30} After thoroughly reviewing the record, we find sufficient evidence to show that appellant knowingly possessed and concealed the firearm in the vehicle on the night in question. Possession may not be inferred solely from mere access to an object or to the locale in which it was found. *See* R.C. 2925.01(K). We are not faced with such a tenuous connection in the case at bar. "Constructive possession exists when one is conscious of the presence of the object and able to exercise dominion and control over it, even if it is not within his immediate physical possession." *State v. Gaefe,* 12th Dist. Clinton No. CA2001-11-043, 2002-Ohio-4995, ¶ 9. Here, the record is replete with circumstantial evidence supporting a finding that appellant possessed or, at a minimum, constructively possessed the firearm. *See State v. Williams*, 12th Dist. Butler No. CA2014-09-180, 2015-Ohio-2010, ¶ 15 (finding that "[a] discovery of readily accessible drugs in close proximity to the accused constitutes circumstantial evidence that the accused was in constructive possession of the drugs").

{¶ 31} As stated, Officer Specht observed appellant making furtive arm movements while sitting in the passenger seat. The officer's testimony described appellant leaning forward and putting his right hand down in between the seat and the passenger door. Appellant initially refused to exit the vehicle, presumably stalling for time to conceal the firearm next to his seat. When appellant finally exited the vehicle, he reached across his body and opened the passenger door with his left hand. The officer inferred that appellant's right hand was still occupied with the firearm, a .45-caliber weapon too large and unwieldy to slide under the passenger seat in a Hyundai Sonata.

{¶ 32} All three men went into the UDF convenience store. The surveillance video did

not show any man other than appellant getting into and out of the Sonata's passenger seat. The video showed the "passed out man," exit the store and go straight to the driver's side of the vehicle next to the gas pump. He remained there, leaning against the car with the gas nozzle inserted into the tank, until Officer Specht pulled up. The third man, Thomas, exited the convenience store just before the officer arrived. As far as the video shows, neither Davis nor Thomas went near the Sonata's passenger seat prior to Officer Specht's arrival.

{¶ 33} Appellant argues that there was no evidence the gun belonged to him. But the pieces of the evidentiary puzzle, including Officer Specht's testimony and UDF surveillance videos inside and outside the store, support appellant's convictions. *See State v. Campbell,* 5th Dist. Stark No. 2004CA00176, 2005-Ohio-795, ¶ 29 (furtive movements, defendant's occupation of seat, and location of firearm next to defendant's seat were among evidence that supported conviction for carrying a concealed weapon).

{¶ 34} Because the record contains sufficient evidence to establish that appellant knowingly possessed and concealed the loaded firearm in the vehicle, appellant's second assignment of error is overruled.

{¶ 35} Assignment of Error No. 3:

{¶ 36} IT WAS ERROR FOR THE COURT TO FAIL TO MERGE THE CARRYING CONCEALED WEAPON CHARGE (RC 2923.12 A2) AND WEAPONS UNDER DISABILITY CHARGE (2923.13A2) FOR SENTENCING PURPOSES.

{¶ 37} According to appellant, the trial court erred in sentencing him on his convictions for carrying a concealed weapon and having a weapon while under disability because these offenses are allied offenses of similar import under R.C. 2941.25.

{¶ 38} Typically, a reviewing court conducts a de novo review of a trial court's R.C. 2941.25 merger determination. *State v. Williams,* 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 28. However, as in this case, a reviewing court is limited to a plain error analysis when the

- 10 -

accused fails to properly preserve a merger issue by objecting at the trial court level. *State v. Willis*, 12th Dist. Butler No. CA2012-08-155, 2013-Ohio-2391, ¶ 33-35. *See also State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 31 (failure to merge convictions at sentencing which are allied offenses under R.C. 2941.25 constitutes plain error). As discussed, plain error occurs where there is an obvious deviation from a legal rule which affected the defendant's substantial rights, or influenced the outcome of the proceeding. *Barnes*, 94 Ohio St.3d at 27.

{¶ 39} R.C. 2941.25, Ohio's multiple-count statute, prohibits the imposition of multiple punishments for the same criminal conduct. *State v. Brown*, 186 Ohio App.3d 437, 2010-Ohio-324, ¶ 7 (12th Dist.). Specifically, R.C. 2941.25 provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 40} The Ohio Supreme Court clarified the tripartite test for deciphering allied offenses within the meaning of R.C. 2941.25 in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995. Courts scrutinizing the issue of merger under R.C. 2941.25 must evaluate three distinct factors – conduct, animus, and import. *Ruff* at paragraph one of the syllabus. Pursuant to *Ruff*:

> [W]hen determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate

convictions.

*Id.* at ¶ 31.

{¶ 41} In a case subsequent to *Ruff*, the Tenth District Court of Appeals considered whether a defendant's convictions for carrying a concealed weapon and having a weapon while under disability were allied offenses of similar import. *State v. Hobbs*, 10th Dist. Franklin No. 14AP-225, 2015-Ohio-2419, ¶ 35. The court cited a line of cases predating *Ruff*, all of which had concluded that carrying a concealed weapon and having a weapon while under disability are committed with separate animus, thus obviating merger. *Id.*, citing *State v. Rice*, 69 Ohio St.2d 422, 427 (1982); *State v. Willis*, 2013-Ohio-2391 at ¶ 41-43; *State v. Young*, 2d Dist. Montgomery No. 23642, 2011-Ohio-747, ¶ 46-49; *State v. Ryan*, 7th Dist. Mahoning No. 10-MA-173, 2012-Ohio-1265, ¶ 53. Thereafter, the appeals court held that "*Ruff* does not change the rationale or validity of those cases because *Ruff* still prohibits merger if offenses are committed with separate animus." *Hobbs* at ¶ 35. We agree.

{¶ 42} In the context of Ohio's multiple-count statute, "animus" refers to purpose or, more precisely, immediate motive. *State v. Lewis*, 12th Dist. Clinton No. CA2008-10-045, 2012-Ohio-885, ¶ 13. Animus for multiple offenses is identical where a defendant acted with the same purpose, intent, or motive in committing the offenses. *Id.* Often, animus must be inferred from surrounding circumstances. *State v. Lung*, 12th Dist. Brown No. CA2012-03-004, 2012-Ohio-5352, ¶ 12.

{¶ 43} After reviewing the record in the case sub judice, we find that appellant's animus in carrying a concealed weapon was distinct from his animus in having a weapon while under disability. The purpose or immediate motive behind carrying a concealed weapon is to unlawfully hide a weapon from plain view. The purpose or immediate motive behind having a weapon while under disability is to possess said weapon despite being legally prohibited from doing so. These animi are clearly distinct. Someone can purposefully

- 12 -

have a weapon in contravention of legal prohibition while not concealing it, and vice versa. Therefore, merger of these offenses was unwarranted.

{¶ 44} Because the trial court did not plainly err in declining to merge the aforementioned convictions, appellant's third assignment of error is overruled.

{¶ 45} Assignment of Error No. 4:

{¶ 46} THE APPELLANTS [sic] TRIAL IN THE INSTANT CASE WAS TAINTED BY THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL AND THE MATTER SHOULD BE REVERSED ON THE GROUNDS OF INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 47} Appellant contends that defense counsel's performance was deficient in failing to seek suppression of the firearm and in failing to call numerous witnesses at trial.

{¶ 48} To establish ineffective assistance of counsel, appellant must show that counsel's actions fell below an objective standard of reasonableness and that appellant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-88, 693, 104 S.Ct. 2052 (1984). Prejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Id.* at 694. The proponent of an ineffective assistance claim must establish both elements to warrant relief. *State v. Knowlton*, 4th Dist. Washington No. 10CA31, 2012-Ohio-2350, ¶ 35. Failure to satisfy one prong of the ineffective assistance test renders review of the other prong unnecessary. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697; *State v. Napier*, 12th Dist. Clermont Nos. CA2014-06-039 and CA2014-06-046, 2015-Ohio-1413, ¶ 12.

{¶ 49} In order to demonstrate ineffective assistance of counsel based upon the failure to file a motion to suppress, the defendant must advance a viable legal basis for suppression of the evidence in question. *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, ¶ 35; *State v. Smith*, 12th Dist. Fayette No. CA2014-05-013, 2015-Ohio-1094, ¶ 44. Even so, sound trial strategy does not constitute ineffective assistance of counsel. *State v. Conway*,

- 13 -

109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. Where trial counsel decides that filing a motion to suppress would be futile, this determination is presumed reasonable. *State v. Brown*, 12th Dist. Warren No. CA2002-03-026, 2002-Ohio-5455, ¶ 11.

{¶ 50} After reviewing the record, we find that trial counsel's decision to forego a motion to suppress was not objectively unreasonable. Despite appellant's arguments to the contrary, Officer Specht was legally justified in searching the vehicle. According to the officer's testimony, appellant's furtive arm movements while seated in the vehicle prompted the officer's suspicion of danger. Appellant's initial, stern refusal to exit the vehicle only fostered the officer's apprehensions. The officer testified that he believed appellant was trying to stall for time for whatever he was doing beside the passenger seat. Appellant's reaching across his body to open the car door with his left hand furthered this suspicion. In the wake of these observations, a protective search of the vehicle was warranted. *Michigan v. Long*, 463 U.S. 1032, 1049-50, 103 S.Ct. 3469 (1983). Officer Specht was justified in checking for weapons prior to allowing appellant to return to the car. *See id.* Because a motion to suppress the results of the search would have been futile, trial counsel was not ineffective for electing to forego the motion. *Brown*, 2002-Ohio-5455 at ¶ 11.

{¶ 51} Regarding proposed trial witnesses, appellant specifically attacks trial counsel's failure to call "the driver of the vehicle." Though unnamed in appellant's brief, we assume appellant was referring to Brandon Davis. A decision regarding whether or not to call witnesses falls within the ambit of trial strategy. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 222; *State v. McMullen*, 12th Dist. Butler Nos. CA2005-09-414, CA2005-10-427, and CA2005-10-429, 2006-Ohio-4557, ¶ 53. As stated, we afford trial counsel's strategic decisions considerable deference. Moreover, appellant offers only speculation as to what Davis may have testified. Mere speculation regarding witness testimony is insufficient to sustain a claim of ineffective assistance of counsel. *McMullen* at ¶ 53. Despite appellant's

protestations, we cannot reverse a conviction based upon what a potential witness "may" have said.

{¶ 52} In addition, pursuant to Officer Specht's testimony, Davis appeared to be so intoxicated that he was leaning against the car unconscious when the officer arrived. The surveillance video depicted Davis repeatedly laying his head down and struggling to remain conscious inside the UDF convenience store. Undoubtedly, testimony by a witness in such a state would not have been afforded much weight at trial. We conclude that defense counsel's decision not to present testimony from Davis and other unnamed witnesses at trial was not objectively unreasonable.

{¶ 53} Because appellant has failed to establish that defense counsel's decisions were unreasonable, his ineffective assistance claim is without merit. Appellant's fourth assignment of error is overruled.

{¶ 54} Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.