[Cite as *State v. Quintile*, 2024-Ohio-2026.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 2023CA0046-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| NICHOLAS R. QUINTILE | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 21CR0987 |

DECISION AND JOURNAL ENTRY

Dated: May 28, 2024

FLAGG LANZINGER, Judge.

{¶1} Nicholas Quintile appeals his conviction from the Medina County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2} A grand jury indicted Quintile on one count of improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16(B), along with an accompanying forfeiture specification. Quintile pleaded not guilty and moved to dismiss the charge based upon the alleged unconstitutionality of R.C. 2923.16(B). The trial court denied Quintile's motion, and the matter proceeded to a jury trial wherein the following evidence was adduced.

{¶3} A trooper with the Ohio State Highway Patrol testified that dispatch received a call on November 20, 2021, regarding an incident wherein a driver had brandished a handgun at another driver on State Route 18. The caller provided dispatch with a description of the vehicle

and the driver, as well as the vehicle's license plate number. The caller also informed dispatch that the vehicle pulled into a Kohl's parking lot.

{¶4} The trooper responded to the Kohl's parking lot and located the vehicle, which was parked and unoccupied at the time. The trooper then requested the assistance of the Medina Township Police Department since the Ohio State Highway Patrol does not have jurisdiction on private property.

{¶5} An officer from the Medina Township Police Department arrived and ran the license plate number of the vehicle, which was registered to Quintile's mother. The officer indicated that he had a previous interaction with Quintile and would be able to recognize him. Quintile then emerged from Kohl's and started walking toward the vehicle. The officer recognized Quintile from his prior interaction with him, and the trooper indicated that Quintile matched the description provided to dispatch.

{¶6} The officer and the trooper approached Quintile and questioned him about the incident. Quintile admitted that he brandished a handgun, which was a .380 caliber pistol, during an incident that occurred on State Route 18. Quintile also admitted that the handgun was loaded and stored between the two front seats of the vehicle. The officer then recovered the handgun from the vehicle, ran the serial number, and discovered that it had been reported stolen in 2012 in Columbus. Quintile told the officer that he purchased the handgun from a third party, and admitted that he did not have a concealed handgun license.

{¶7} Quintile testified on his own behalf regarding the incident. According to Quintile, a man driving a pickup truck slowed his truck down and started cussing, yelling, and shaking his fist at Quintile while Quintile was driving to work. Quintile testified that he showed the man in the pickup truck his handgun as a way of communicating: "Hey, man, I'm armed[.]" The truck

then "scooted off" and Quintile continued driving, stopping at Kohl's to pick up a shirt before work. Quintile acknowledged that he did not have a concealed handgun license at the time of the incident (i.e., on November 20, 2021). Quintile also testified that he purchased the handgun from a family friend, and that he was unaware that the handgun had been stolen.

{¶8} The jury found Quintile guilty of improperly handling a firearm in a motor vehicle with the accompanying forfeiture specification. The trial court sentenced Quintile to three years of community control and thirty days in the Medina County Jail. The trial court also ordered Quintile to forfeit the handgun. Quintile now appeals, raising three assignments of error for this Court's review. This Court will address Quintile's first and second assignments of error together because they both challenge the effectiveness of Quintile's trial counsel.

II.

ASSIGNMENT OF ERROR I

APPELLANT RECEIVED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL DID NOT OBJECT TO HIGHLY PREJUDICIAL AND COMPLETELY IRRELEVANT TESTIMONY ABOUT THE WEAPON BEING STOLEN. FURTHER, TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR ASKING APPELLANT ABOUT THE STOLEN WEAPON ON THE STAND.

ASSIGNMENT OF ERROR II

APPELLANT RECEIVED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL DID NOT OBJECT TO HIGHLY PREJUDICIAL HEARSAY CONCERNING DETAILS OF THE ROAD RAGE INCIDENT.

{¶9} In his first and second assignments of error, Quintile argues that his trial counsel provided ineffective assistance. For the following reasons, this Court disagrees.

{¶10} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. To prevail on a claim of ineffective assistance of

counsel, Quintile must establish: (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, Quintile must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138. "This Court need not address both prongs of *Strickland* if an appellant fails to prove either prong." *State v. Carter*, 9th Dist. Summit No. 27717, 2017-Ohio-8847, ¶ 27.

{¶11} In his first assignment of error, Quintile argues that his trial counsel rendered ineffective assistance because his trial counsel did not object when the State's witnesses testified that the handgun was reported stolen several years prior. Quintile argues that testimony regarding the legal status of the handgun was not relevant to the underlying charge and, therefore, was inadmissible. Quintile alternatively argues that, even if it was relevant, that testimony was still inadmissible because any probative value was substantially outweighed by the danger of unfair prejudice.

{¶12} Evid.R. 402 provides that "[e]vidence which is not relevant is not admissible." Meanwhile, Evid.R. 403(A) provides, in part, that, "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice * * *." Regarding trial counsel's failure to object, the Ohio Supreme Court has stated that "the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 103. Relatedly, this Court has "consistently

held that 'trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel'" unless the failure to object prejudiced the defendant. *State v. Velez*, 9th Dist. Lorain No. 06CA008997, 2007-Ohio-5122, ¶ 17, quoting *State v. Taylor*, 9th Dist. Lorain No. 01CA007945, 2002-Ohio-6992, ¶ 76.

{¶13} Here, the record reflects that the prosecutor and the State's witnesses referred to the fact that the handgun at issue had been reported stolen in 2012 in Columbus. During his own testimony, Quintile explained that he purchased the handgun from a family friend and was unaware that the handgun had been reported stolen several years prior.

{¶14} While the legal status of the handgun was not relevant to the indicted charge of improper handling, the record indicates that the officer and the trooper referred to this fact while explaining the course of their investigation. Quintile's trial counsel's failure to object to the State's witnesses' references to the handgun being stolen may be considered sound trial strategy, especially considering there was no allegation or charge related to whether Quintile stole the handgun or knew it was stolen. *State v. Granakis*, 9th Dist. Wayne No. 15AP0053, 2017-Ohio-8428, ¶ 29 (noting that trial counsel's failure to object may be considered sound trial strategy).

{¶15} Even if Quintile's trial counsel was deficient for not objecting to that testimony, Quintile has failed to establish that it affected the outcome of the trial. Quintile readily admitted that he did not have a concealed handgun license and that he knowingly had a loaded handgun stored between the two front seats of his vehicle. Thus, regardless of any testimony regarding the handgun being stolen, this Court cannot say that it affected the outcome of the trial. *See* R.C. 2923.16(B), R.C. 2923.16(F)(5) (at the time of the incident, prohibiting persons without a concealed handgun license from knowingly having a loaded firearm in a motor vehicle that was

accessible to the driver or passenger without leaving the vehicle). Quintile, therefore, cannot establish ineffective assistance. Quintile's first assignment of error is overruled.

{¶16} Regarding his second assignment of error, Quintile argues that his trial counsel rendered ineffective assistance by failing to object to the trooper's hearsay testimony about the details of the "road rage" incident that the trooper learned from the 911 dispatcher. Quintile points to the trooper's testimony that dispatch received a 911 call regarding a possible "road rage" incident wherein a person brandished a weapon outside the window of a vehicle, and the caller thought a shooting might have occurred. Quintile argues that this testimony was "presented to show that the driver of the vehicle, later identified as [Quintile], was seen brandishing a firearm." Quintile argues that he suffered prejudice because, had the jury not heard this testimony, "the jury may have forgiven" him.

{¶17} The record reflects that the trooper testified as to the "road rage" incident while explaining how he became involved in the investigation. "It is well-established that, where statements are offered into evidence to explain an officer's conduct during the course of investigating a crime, such statements are generally not hearsay." *State v. Brown*, 3d Dist. Allen No. 1-19-61, 2020-Ohio-3614, ¶ 82, quoting *State v. Humphrey*, 10th Dist. Franklin No. 07AP-837, 2008-Ohio-6302, ¶ 11; *State v. Anthony*, 5th Dist. Stark No. 2020CA00126, 2021-Ohio-1755, ¶ 35 (collecting cases).

{¶18} Even if Quintile's trial counsel was deficient for not objecting to the trooper's testimony in that regard, Quintile has failed to establish that the result of the trial would have been different. As noted, Quintile testified on his own behalf and admitted that he brandished a handgun at another driver. More importantly, Quintile readily admitted that he did not have a concealed handgun license, and that he knowingly had a loaded handgun stored between the two front seats

of his vehicle on the day of the incident. Thus, regardless of the trooper's testimony regarding the "road rage" incident, Quintile has not established that, but for that testimony, the jury would not have found him guilty of improper handling. Accordingly, Quintile's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS.

{¶19} In his third assignment of error, Quintile argues that the trial court erred by denying his pre-trial motion to dismiss, which was based upon the alleged unconstitutionality of R.C. 2923.16. For the following reasons, this Court disagrees.

{¶20} "We review a ruling on a pretrial motion to dismiss criminal charges using the de novo standard." *State v. Saxon*, 9th Dist. Lorain No. 09CA009560, 2009-Ohio-6905, ¶ 5. Likewise, "[t]he determination whether a statute * * * is constitutional is a question of law that we review de novo." *City of Cleveland v. State*, 157 Ohio St.3d 330, 2019-Ohio-3820, ¶ 15. "When applying the de novo standard of review, this Court gives no deference to the trial court's legal determinations." *State v. Hunter*, 9th Dist. Summit No. 28484, 2018-Ohio-568, ¶ 18, quoting *State v. West*, 9th Dist. Lorain No. 04CA008554, 2005-Ohio-990, ¶ 33.

{¶21} Prior to trial, Quintile moved to dismiss the charge against him for improperly handling a firearm in a motor vehicle under R.C. 2923.16(B). Quintile argued that R.C. 2923.16 violated the Second Amendment and was unconstitutional under the U.S. Supreme Court's recent decision in *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1 (2022). The State opposed Quintile's motion, and the trial court ultimately denied it.

{¶22} The Second Amendment to the U.S. Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear

Arms, shall not be infringed." *See also* Ohio Constitution, Article I, Section 4 ("The people have the right to bear arms for their defense and security * * *."). In *Bruen*, the U.S. Supreme Court set forth the standard for applying the Second Amendment as follows:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

*Bruen* at 24. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen* at 17, quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, fn. 10 (1961). As one Ohio appellate court has noted, "the interpretation and application of *Bruen* is a novel issue in this state and remains unsettled in courts across the country." *State v. Johnson*, 8th Dist. Cuyahoga No. 113034, 2024-Ohio-1163, ¶ 30.

**{¶23}** Here, the relevant regulation was R.C. 2923.16(B), which provided that "[n]o person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." Exempted from this provision were persons who—unlike Quintile—had a valid concealed handgun license and were not knowingly in a place set forth in R.C. 2923.126(B). R.C. 2923.16(F)(5); *see State v. Smith*, 10th Dist. Franklin No. 18AP-124, 2018-Ohio-4297, ¶ 14, citing R.C. 2923.16(F)(5) (noting that R.C. 2923.16(B) did not apply to persons who had obtained a concealed handgun license). R.C. 2923.111, effective June 13, 2022, now allows a "[q]ualifying adult" to carry a concealed handgun without a license, including in a motor vehicle. R.C. 2923.111(B) through (C); R.C. 2923.16(F)(5). That law, however, was not in effect at the time of the underlying incident (i.e., on November 20, 2021), and Quintile has not argued that it applies retroactively to him. This Court's analysis, therefore, will focus on the law as it existed at the time of the underlying incident.

**{¶24}** In his pre-trial motion to dismiss, Quintile argued that there were no historical regulations regarding the transportation of loaded handguns in a motor vehicle, rendering R.C. 2923.16 unconstitutional under *Bruen*. As the U.S. Supreme Court and Ohio Supreme Court have made clear, the right to bear arms is not absolute; it has historically been subject to well-defined restrictions, including restrictions regarding the manner in which a person may carry a firearm. *See Bruen* at 21, quoting *D.C. v. Heller*, 554 U.S. 570, 626 (2008) ("From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."); *Klein v. Leis*, 99 Ohio St.3d 537, 2003-Ohio-4779, ¶ 7 ("[T]he right to bear arms is fundamental. * * * Yet, however fundamental and entrenched in the constitutional heritage of our state, the right to bear arms is not absolute."). R.C. 2923.16(B) was one of those restrictions as it "merely regulate[d] the manner in which a person may transport or have a firearm in a motor vehicle without prohibiting all transportation of such weapons." (Emphasis omitted.) *State v. Henderson*, 11th Dist. Portage No. 2010-P-0046, 2012-Ohio-1268, ¶ 49; *accord Jackson*, 2023-Ohio-2063, at ¶ 13 ("R.C. 2923.16(B) in particular is not a wholesale preclusion against handling loaded firearms within motor vehicles for all Ohioans * * *."); *State v. Robinson*, 12th Dist. Butler No. CA2014-12-256, 2015-Ohio-4649, ¶ 18 ("R.C. 2923.16 restricts the manner in which firearms may be handled in a motor vehicle. * * * The statute does not operate as a blanket prohibition on transporting firearms while travelling by vehicle.").

**{¶25}** As noted, a person who had a valid concealed handgun license was exempted from R.C. 2923.16(B), so long as that person was not knowingly in a place set forth in R.C. 2923.126(B) (e.g., a police station or a courthouse). Thus, "R.C. 2923.16(B)'s prohibition against handling loaded, concealed handguns in motor vehicles falls under Ohio's broader concealed weapons law."

*State v. Jackson*, 8th Dist. Cuyahoga No. 112020, 2023-Ohio-2063, ¶ 10. Ohio's concealed handgun licensing regime (i.e., R.C. 2923.125) is a "shall issue" regime. *Bruen*, 597 U.S. at 13; *id.* at fn.1 (acknowledging that Ohio, along with 42 other states, has a "shall issue" licensing regime). This means that "authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability." *Id.* at 13. *Bruen* does not affect these types of licensing regimes. *Id.* at 79 (Kavanaugh, J., concurring, joined by Roberts, C.J. ) ("[T]he Court's decision does not affect the existing licensing regimes—known as 'shall-issue' regimes— that are employed in 43 States.").

{¶26} While Quintile argued that R.C. 2923.16(B) did not survive a *Bruen* analysis, at the time of the underlying incident, R.C. 2923.16(B) only prohibited persons *without a concealed handgun license* from having a loaded handgun in the passenger compartment of a vehicle. Simply put, requiring a person to have a concealed handgun license in order to have a loaded handgun in the passenger compartment of a car did not violate the Second Amendment. *Smith*, 2018-Ohio-4297, at ¶ 14 ("[N]o constitution recognizes a right to drive a motor vehicle with a loaded pistol ready at hand for use."); *see Pennsylvania v. McKown*, 2013 Pa.Super 282, 79 A.3d 678, 690 (Oct. 22, 2013) (stating that the Second Amendment does not "bestow[] on any person the right to carry a concealed firearm or transport a loaded firearm in a vehicle."). *Bruen* does not change this fact. *See People v. Allen*, 96 Cal.App.5th 573, 314 Cal.Rptr.3d 474, 480 ("*Bruen* * * * does not stand for the proposition that the Second Amendment affords individuals the unfettered right to carry an unregistered firearm while in a vehicle.").

{¶27} Moreover, Ohio courts, including this Court, have consistently acknowledged the constitutionality of R.C. 2923.16. *See, e.g.*, *Klein*, 99 Ohio St.3d 537, 2003-Ohio-4779, at ¶ 3

(holding that R.C. 2923.16(B) "do[es] not unconstitutionally infringe the right to bear arms."); *State v. Shover*, 9th Dist. Summit No. 26800, 2014-Ohio-373, ¶ 15 (concluding that if "the Second Amendment right to keep and bear arms does extend to motor vehicles * * * R.C. 2923.16(B) would pass constitutional muster."); *Robinson*, 2015-Ohio-4649, at ¶ 18 ("R.C. 2923.16 does not unconstitutionally infringe upon the right to keep and bear arms."); *Henderson*, 2012-Ohio-1268, at ¶ 38, 55 (holding same and collecting cases); *State v. Barber*, 6th Dist. Lucas No. L-22-1278, 2023-Ohio-2991, ¶ 30 (holding same and collecting cases). This remains true for Ohio courts that have considered the constitutionality of R.C. 2923.16 after *Bruen*. *See, e.g.*, *Barber* at ¶ 30; *Jackson*, 2023-Ohio-2063, at ¶ 24.

{¶28} Having reviewed the record and the relevant law, this Court concludes that the trial court did not err when it denied Quintile's motion to dismiss. Accordingly, Quintile's third assignment of error is overruled.

III.

{¶29} Quintile's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period

for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

COLE F. OBERLI, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.